IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| **KOSHA, LLC; et al** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **CV:** 4:19-cv-00172-CDL |
| ) | |
| **CLARENCE DEAN ALFORD;** ) | |
| et al ) | |
| Defendants. ) | |

**SUPPLEMENTAL MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

COME NOW, Kosha, LLC; et al. ("Plaintiffs") pursuant to Rule 65 of the *Federal Rules of Civil Procedure* and hereby file this supplemental motion in support of a preliminary injunction freezing the assets of Allied Energy Services, LLC ("Allied"). In support of this application, Plaintiffs state as follows:

**I.    Introduction**

Over the past two years, Dean Alford, in concert with the other defendants in this case, engaged in what Plaintiffs believe effectively amounts to a Ponzi scheme through which Dean Alford solicited in excess of $6 million dollars from Plaintiffs. Under the guise of funding progressive energy conservation projects, Dean took Plaintiffs money in exchange for promissory notes. *See* Exhibit 1, Affidavit of

Andrew P. Campbell. The exact terms of the notes vary, but all of Plaintiffs notes are in default. A majority of the notes, approximately $4.4 million, matured on July 31, 2019. The notes that have a future maturity date, however, also have an acceleration clause that provides the holder to call the note due upon written notice in the event of default. Given the behavior of Dean Alford, including the fact that he is currently under investigation on criminal racketeering charges, and his access and control over Defendant Allied, there is a significant risk present that Defendants may fraudulently transfer, dispossess, dissipate, or remove any of Allied's financial accounts, including checking, savings, or investment accounts.

> **II. This Court has authority to grant Plaintiffs' request for preliminary injunctive relief pursuant to Rule 65 because Plaintiffs seek equitable relief**

The key determinate in whether a preliminary injunction should be utilized to "freeze" the assets of a party is whether the plaintiff has sought equitable relief. This is established clearly in *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1530 (11th Cir. 1994) which holds that in a situation where a plaintiff seeks *only* monetary damages and *no* equitable relief "preliminary injunctive relief freezing a defendant's assets in order to establish a fund with which to satisfy a potential judgment for money damages is . . . not an appropriate exercise of a federal district court's authority."

Consequently, "[a] request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in

order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). "[F]ederal Courts have long recognized the propriety of asset freezes where, as here, a plaintiff seeks equitable relief." *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1261 (M.D. Fla. 2013). *See also, Levi Strauss,* 51 F.3d at 987 ("[a] request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief"); *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir.1984) (district court may exercise its full range of equitable powers, including a preliminary asset freeze, to ensure that permanent equitable relief will be possible); see also *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290, 61 S.Ct. 229, 85 L.Ed. 189 (1940) (upholding prejudgment asset freeze in case seeking equitable relief, including appointment of receiver to wind up corporation, rescission of contracts, and the return of disputed fund of money). Further, "[w]hen there is a showing of a securities law violation, the freezing of assets may be appropriate to ensure that the assets will be available to compensate public investors." *S.E.C. v. Asset Recovery & Mgmt. Tr., S.A.*, 340 F. Supp. 2d 1305, 1308 (M.D. Ala. 2004) (holding that an asset freeze was appropriate when issued to preserve assets connected to the underlying illegal activity).

The facts of *Tempay* are analogous to the case at bar. In *Tempay,* Tempay—a payroll funding company—entered into several agreements with Biltres Staffing, whereby Tempay agreed to purchase and Biltres agreed to sell, certain accounts receivable of Biltres. *Tempay*, 929 F. Supp. 1255, 1256-57. Tempay would advance 85% of the weekly invoices from the Biltres staffing customers to Biltres and Tempay would typically receive full payment on the invoices within 45 – 60 days. *Id.* at 1257. The invoice payments were made from checks purportedly paid from the Biltres staffing customers, which were forwarded to Tempay. *Id.* However, over the course of the relationship, Tempay became suspicious of Biltres and discovered that it was the victim of a significant fraud perpetrated by Biltres, resulting in a $2.8 million loss. *Id.* After Biltres was confronted, Biltres hired a law firm and issued a retainer check for its legal services using the funds it fraudulently obtained from Tempay. *Id.* Upon a motion for disgorgement, a magistrate judge held that the disputed funds should be held in trust until there was an appropriate judgment entered in the case so that the Court could make a determination as to Tempay's request to impose a constructive trust. *Id.*

Upon review, the District Court for the Middle District of Florida determined that the asset freeze was proper because the magistrate judge relied on a constructive trust theory—an equitable remedy designed to prevent the unjust enrichment of culpable parties—and decided that the disputed funds should be held in trust so that

the Court could decide later whether a constructive trust was warranted after a determination of the merits of plaintiff's claims. *Tempay*, 929 F. Supp. 2d at 1262.

*Tempay* further distinguished *Rosen* stating "[t]he *Rosen* court held that a district court lacks authority to freeze assets pending trial **solely** to establish a fund to satisfy a potential judgement for money damages." *Id.* at 1260. However, where, as here, a "[p]laintiff is not seeking an asset freeze merely to preserve general assets of the Defendants in order to ensure that there will be assets sufficient to satisfy a money judgment after trial, but rather is seeking to preserve specific assets it contends remain its property because they were acquired by Defendants as a result of fraud," a preliminary injunction freezing the assets is proper. *Id.* at 1261. Further, the available remedies in *Rosen* were legal, not equitable. *Levi Strauss*, 51 F.3d at 987. A year after *Rosen*, in *Levi Strauss*, the Eleventh Circuit held "the district court ha[s] the authority to freeze those assets which could have been used to satisfy an equitable award of profits." *Id.*

In the present case, Plaintiffs contend that Dean Alford, in concert with the other Defendants fraudulently solicited investment money from the Plaintiffs with no intention of returning the investment money. Plaintiffs wired their money to an account purportedly owned by Allied. In the remedies sought by Plaintiffs, Plaintiffs have asked for—among other things—a temporary restraining order, preliminary and permanent injunctive relief, an accounting, and the imposition of an equitable

lien and a constructive trust on the real and personal property of the Defendants in an effort to protect Plaintiffs' interest in the recovery of their investments, including the profits promised by Defendants. (Compl. p. 42, Doc. 1). Similar to *Tempay*, here, Defendants acquired Plaintiffs' money fraudulently and Plaintiffs have requested equitable relief from the Court—including a constructive trust.  This clearly takes this case outside the purview of *Rosen* and "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss*, 51 F.3d at 987 (11th Cir. 1995).

### III. Plaintiffs have satisfied the requirements for this Court to enter a preliminary injunction

In considering whether to grant a preliminary injunction, "a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor. Instead, it must determine whether the evidence establishes: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest.'" *Levi Straus and Co v. Sunrise Intern Trading Inc* (quoting *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994). A trial court's decision as to injunctive relief will not be disturbed on appeal except in cases of clear abuse of discretion. *Palmer v. Braun*, 287 F.3d 1325, 1329

(11th Cir. 2002). "Where there is a clear and imminent threat of an irreparable injury amounting to manifest oppression it is the duty of the court to protect against the loss of the asserted right by a temporary restraining order." *Woods v. Wright*, 334 F.2d 369, 375 (5th Cir. 1964). As set forth fully below, Plaintiffs have met each of the four elements required for this Court to grant a preliminary injunction to preserve the status quo at Allied.

    a. <u>Plaintiffs have a substantial likelihood of success on the merits of their claims</u>

Plaintiffs clearly have a substantial likelihood of success on them merits of their claims. Defendant Allied has defaulted on the terms of the notes it and Dean Alford issued to Plaintiffs and has been unjustly enriched as a result. "A constructive trust is an equitable remedy imposed by a court to prevent unjust enrichment." *City of Atlanta v. Hotels.com, L.P.*, 775 S.E.2d 276, 280 (2015). Without the issuance of preliminary injunctive relief, Plaintiffs will lose their future equitable remedies that the Court may impose at a later date.

    b. <u>There is a substantial threat of irreparable injury if the injunction is not granted</u>

A showing of irreparable injury is "'the *sine qua non* of injunctive relief.'" *Northeastern Florida Chapter of the Association of General Contractors v. City of Jacksonville, Florida*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978)). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *City of Jacksonville*,

7

896 F.2d at 1285 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989)); see also *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (holding that "a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury"). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *City of Jacksonville*, 896 F.2d at 1285.

As it stands, Defendants, Dean Alford and Dan Alford, the shareholders of Defendant Allied, have exclusive access and control over Allied's financial accounts. Alford was recently charged with racketeering and the criminal attempt to commit theft by taking because he attempted to "get money for his company through phony invoices for work never performed at the University of Georgia" and other area businesses. See articles attached to Exhibit 1). There is a considerable threat that the equitable relief sought by Plaintiffs will not be available if the court does not immediately take action to freeze the accounts of Allied.

  c. <u>The threatened injury to Plaintiffs outweighs the harm an injunction may cause the Defendants</u>

The equitable remedies sought by the Plaintiffs, including a constructive trust over the assets of Defendants, will not be available if the Court does not enter preliminary injunctive relief. *See* Exhibit 2, Affidavit of Kosha, LLC; Exhibit 3, Affidavits of Dynamic W2E, LLC and Dynamic AES, LLC. Clearly, there are

limited funds available in Allied's coffers if Defendant Dean Alford was fraudulently attempting to further fund his enterprise through phony invoices for work that was never performed. Exhibit 1. If Dean Alford is allowed to continue managing Allied's accounts and money, he will continue to deplete Allied's financial accounts and restrict Plaintiffs ability to obtain any equitable relief.

   d.  <u>The entry of a preliminary injunction freezing Allied's financial accounts would not be against public policy.</u>

There is nothing to indicate that granting a preliminary injunction would be adverse to the public interest. Further, issuing preliminary injunctive relief would prevent Dean Alford and Allied from making a wholesale liquidation of their financial accounts. If there is no indication that preliminary injunctive relief will be adverse to public interest, such relief should be granted.

WHEREFORE, Plaintiffs request this Court immediately issue preliminary injunctive relief, freezing the financial accounts of Allied.

Respectfully submitted,

*/s/ Andrew P. Campbell*
Andrew P. Campbell (*Admitted PHV*)
Yawanna N. McDonald (*Admitted PHV*)
(ASB 9372-B58T)
Erin G. Godwin (*Admitted PHV*)

**OF COUNSEL:**

**CAMPBELL PARTNERS, LLC**
505 20th Street North
Suite 1600

Birmingham, AL 35203
Tel: 205.224.0756
Fax: 205.383.2646
andy@campbellpartnerslaw.com
yawanna@campbellpartnerslaw.com
erin@campbellpartnerslaw.com


S. Lester Tate, III (GA 698835)
Akin & Tate Attorneys
11 S Public Square
Cartersville, GA 30120
lester@akin-tate.com
770-382-0780

## Certificate of Service

I do hereby certify that I have on this 7th day of November 2019, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all other parties.

                                        *Andrew P. Campbell*
                                          Of Counsel