IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KOSHA, LLC, *et al.*,          *

    Plaintiffs,          *

vs.                          *

                           CASE NO. 4:19-CV-172 (CDL)

CLARENCE DEAN ALFORD*, et al.*,   *

    Defendants.          *

O R D E R

    This order disposes of the three motions to dismiss and one motion for summary judgment presently pending before the Court.[1]

## I.  **Motions to Dismiss for Insufficient Service of Process**

    Stephen Lepley, Profit Advisors LLC a/k/a The Lepley Group ("Lepley Defendants"), and Jitendra Gandhi seek dismissal of the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(5), claiming they were not timely served with process. Plaintiffs filed this action on October 18, 2019. Ninety days passed, and Plaintiffs did not serve Gandhi or the Lepley Defendants with the summons and copy of the complaint. No motion to dismiss was filed at that time. Less than two weeks after Federal Rule of Civil Procedure 4(m)'s ninety-day deadline expired and before the filing of a motion to dismiss, Gandhi was served. Shortly after that and still prior to the filing of a

---

[1] Debra Dlugolenski recently filed a motion to dismiss the federal question claims. That motion is not ripe for review, so it is not addressed in this order.

motion to dismiss, the Lepley Group and Lepley were served. Thus, although the Defendants have now been served, that service was between thirteen and twenty-seven days late.  If a defendant "is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff-- must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).  Before any motion to dismiss was filed and before the Court issued any order requiring Plaintiffs to show cause why this action should not be dismissed under Rule 4(m), Gandhi and the Lepley Defendants were served.    Under these circumstances, dismissal is not appropriate.

## II.  Motions to Dismiss for Failure to State a Claim

Gandhi, the Lepley Defendants, and Debra Dlugolenski filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable

2

expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

A.  Factual Allegations

Plaintiffs allege the following facts in their Amended Complaint, which must be accepted as true for purposes of the present motion. Clarence Dean Alford was president and chief executive officer of Allied Energy Services, LLC ("Allied"), a company that was in the business of developing energy projects. In 2018, Alford, Allied, and an affiliated company called Augusta Waste-to-Energy, LLC ("Augusta W2E") began selling "investment opportunities" to Plaintiffs. Am. Compl. ¶ 56, ECF No. 59. Plaintiffs allege that instead of being recruited to participate in legitimate investment opportunities, they were fraudulently lured into a Ponzi scheme when Alford, Allied, Gandhi, Lepley, the Lepley Group, and Augusta W2E "capitalized on the reputation of Allied to concoct illusory projects with the intent to defraud individual investors." *Id.* ¶ 55.

The Allied waste-to-energy project purportedly involved the conversion of municipal solid waste from a landfill in Augusta, Georgia into non-waste pellets. *Id.* ¶ 68. After failing to

obtain financing for the project from other sources, Alford and Allied "concocted a scheme to use individual investors to raise funds" for the project. *Id.* ¶ 69. Jitendra Gandhi was a "trusted member of the Plaintiffs' community" who "recruited within the Plaintiffs' community to gain investors for Allied" and its projects. *Id.* ¶¶ 47, 56. Stephen Lepley and the Lepley Group "aided . . . Alford in presenting the financial information and prospectus to Plaintiffs." *Id.* ¶¶ 48-49. "Using Gandhi's ties to the Plaintiffs' community," Alford, Allied, Gandhi, and the Lepley Defendants "recruited individual and small business investors" to fund the waste-to-energy project, even though they knew or should have known that the project "was not feasible and/or illusory, and the Notes purchased would never be repaid." *Id.* ¶¶ 70-71. In 2018, Alford, Gandhi, and Lepley met with some of the Plaintiffs to sell them Allied investment opportunities. Gandhi and Lepley told these Plaintiffs that they had traveled the country with Alford, meeting with local governments to establish waste-to-energy projects. Gandhi told the Plaintiffs that he had invested in Allied for many years, receiving 15% returns "like clockwork." *Id.* ¶ 57. Alford, Gandhi, and the Lepley Defendants also made other representations, including that the waste-to-energy project would be completed by June 2019, that Plaintiffs would receive profits from Allied's production of

biodiesel from the completed project, that a contract was secured for a European entity to purchase the biodiesel pellets, that Delta Airlines was a purchaser of Allied's biodiesel pellets, that Plaintiffs' investments had minimal risks, that interest payments to Plaintiffs would be timely, and that Plaintiffs would receive a full return of their investments, along with interest and an opportunity for profit sharing. *Id.* Plaintiffs were also told that they would receive regular interest payments and the return of their investment within one year, *id.* ¶ 80, when Alford, Allied, Gandhi, and the Lepley Defendants knew or should have known that the waste-to-energy project "was not feasible and/or illusory, and the Notes purchased would never be repaid." *Id.* ¶ 71.

In reliance on the representations, including the communications, presentation, and prospectus that was provided during the initial 2018 meeting and subsequent investor presentations, Plaintiffs purchased "security notes" from Alford and Allied as investments in the waste-to-energy project. Each time an investor invested in Allied projects, Gandhi received a commission. *Id.* ¶ 67. Plaintiffs invested approximately $4,465,000 in the waste-to-energy project. *Id.* ¶ 73. Some Plaintiffs received "minimal interest payments" related to the waste-to-energy project, and that gave Alford, Allied, Gandhi, and the Lepley Defendants "credibility in the Plaintiffs'

community." *Id.* ¶ 76. But instead of completing the project, Alford, Allied, and Gandhi "regularly sought more investors and/or requested that the investors commit more money to the project although no construction had commenced on the project." *Id.* ¶ 72.

After Alford, Allied, and Gandhi secured the first round of investors in the waste-to-energy project, they realized that they needed additional investors to pay them. *Id.* ¶ 74. Therefore, they created a solar energy project to solicit more investors for Allied, which enabled them "to continue making interest payments" to the waste-to-energy investors and "maintain the scheme." *Id.* Alford, Allied, and Gandhi presented the solar energy project as "no risk" and told Plaintiffs that the invested funds would never leave Allied's escrow account; it was to be an investment in Allied's bid process for security option agreements on land contracts to be purchased by European solar developers (with whom Allied claimed to have partnerships) who would ultimately provide the funds to purchase the land and develop projects in Georgia. *Id.* ¶ 75. In February 2019, Alford, Allied, and Gandhi solicited investments within Plaintiffs' community for the solar energy project. Plaintiffs invested approximately $1,475,000 in this project. *Id.* ¶¶ 77.

In April 2019, interest payments to Plaintiffs ceased. Plaintiffs notified Alford and Allied and attempted to call in their investments, but Alford and Allied refused to return the investments. *Id.* ¶ 78. Plaintiffs have not received any of their principal back and have only received partial interest payments. *Id.* ¶ 80. When Plaintiffs requested their payments, Alford initially ignored their requests, then represented that repayment was imminent or told them their checks were in the mail, and then stopped responding altogether. *Id.* ¶ 81. Plaintiffs allege that Alford used their investment money "for his personal benefit for the payment of debts and the acquisition of real and personal property." *Id.* ¶ 83. Plaintiffs further allege that Alford's soon-to-be-ex-wife, Debra Vaughn Dlugolenski, was substantially financially dependent on Alford and that she derived financial benefits because of Alford's misconduct, including real property and the payment of personal expenses. *Id.* ¶¶ 44, 83, 127.

B.  Jitendra Gandhi's and the Lepley Defendants' Motions to Dismiss (ECF Nos. 75 & 76)

Gandhi and the Lepley Defendants argue that Plaintiffs' allegations fail to state any claims against them. Plaintiffs assert claims against Gandhi and the Lepley Defendants for "fraud," "misrepresentation," "fraudulent suppression," and "deceit." Plaintiffs allege additional claims against Gandhi only for "unjust enrichment," "constructive trust," and "money

had and received." The Court first addresses the misrepresentation claims asserted against Gandhi and the Lepley Defendants, followed by a discussion of the remaining claims against Gandhi alone.

### 1.   Fraud/Misrepresentation Claims

Plaintiffs caption Count VI of their Amended Complaint: "Fraud/Misrepresentation/Fraudulent Suppression/Deceit." Am. Compl. 28. Gandhi and the Lepley Defendants argue that Plaintiffs' fraud allegations are pled in an impermissible shotgun manner, do not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), and do not adequately allege facts to support a claim under Georgia law.

Rule 9(b) generally requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). So, to satisfy Rule 9(b), a plaintiff must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled [the plaintiff]; and (4) what the defendants gained by the alleged fraud." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)). To establish a fraudulent misrepresentation claim against each Defendant, Plaintiffs must show that (1) the Defendant made a

false representation of a material fact, (2) the Defendant knew the representation was false when it was made, (3) the Defendant intended for Plaintiffs to rely on the false representation, (4) Plaintiffs reasonably relied on the false representation, and (5) Plaintiffs were damaged as a result. O.C.G.A. § 51-6-2; *accord Grand Master Contracting, L.L.C. v. Lincoln Apartment Mgmt. Ltd. P'ship,* 724 S.E.2d 456, 458 (Ga. Ct. App. 2012). To establish a fraudulent concealment claim, Plaintiffs must ultimately establish that (1) the Defendant omitted a material fact that the Defendant had a duty to disclose, (2) scienter, (3) the Defendant intended for Plaintiffs to rely on the fraudulent concealment, (4) justifiable reliance, and (5) damages to Plaintiffs.[2] *E.g., Baxter v. Fairfield Fin. Servs., Inc.*, 704 S.E.2d 423, 429 (Ga. Ct. App. 2010). And to establish a negligent misrepresentation claim against each Defendant, Plaintiffs must show that (1) the Defendant negligently supplied them with false information, (2) Plaintiffs reasonably relied on the false information, and (3) Plaintiffs suffered economic

---

[2] "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." O.C.G.A. § 23-2-53. Such particular circumstances include "when direct inquiry is made, and the truth evaded, or where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover." *Rivers v. BMW of N. Am., Inc.*, 449 S.E.2d 337, 340 (Ga. Ct. App. 1994) (quoting *Bill Spreen Toyota v. Jenquin*, 294 S.E.2d 533, 539 (Ga. Ct. App. 1982)).

injury proximately flowing from its reliance. *See, e.g., Martin v. Chasteen*, 841 S.E.2d 157, 161 (Ga. Ct. App. 2020).

Gandhi and the Lepley Defendants contend that Plaintiffs did not allege the precise statements that Gandhi and the Lepley Defendants made to each Plaintiff or exactly when each statement was made. They further assert that Plaintiffs' Amended Complaint is a shotgun pleading that fails to give them adequate notice of the claims against them and the grounds upon which each claim rests. Defendants' plea for more precision at this pleading stage asks too much. It is clear what Gandhi and the Lepley Defendants have allegedly done to support Plaintiffs' claims for fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation.

Plaintiffs allege that specified Defendants, including Gandhi and the Lepley Defendants, made material misrepresentations that induced them to invest in the Allied projects. Plaintiffs allege that Gandhi and the Lepley Defendants, along with Alford, concocted illusory projects to defraud individual investors, that Gandhi recruited investors for Allied within the Plaintiffs' community, and that Gandhi and the Lepley Defendants, along with Alford, had a series of meetings with Plaintiffs in 2018 to sell them on the Allied investments and present financial information and a prospectus that the Lepley Defendants helped Dean prepare. Am. Compl.

¶¶ 47-49, 55-56, 70-71. Plaintiffs contend that Alford, Gandhi, and the Lepley Defendants made a number of misrepresentations about the investments—including false statements about the feasibility of the projects and the existence of contracts to purchase Allied's products—even though they knew or should have known at the time that the projects were illusory or unfeasible and that the Notes would never be repaid.[3] *Id.* ¶¶ 57, 70-72, 80. And, Plaintiffs assert that when Allied got in a financial hole making interest payments to the original waste-to-energy project investors, Alford and Gandhi made up the solar energy project and then solicited more investments from Plaintiffs in February 2019, falsely telling Plaintiffs that the investments in the solar project (which Plaintiffs say was a sham) carried no risk and that the funds would never leave Allied's escrow account. *Id.* ¶¶ 74-75. Plaintiffs further allege that these Defendants

---

[3] Gandhi and the Lepley Defendants assert that the Court should ignore Plaintiffs' allegation that they knew or should have known that the W2E project was "not feasible and/or illusory" because that allegation is made on information and belief. Am. Compl. ¶ 71. The Court disagrees. The Court understands that fraud pleadings generally cannot be based on information and belief, but there is an exception where, as here, the factual information is peculiarly within the defendant's knowledge or control. *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (per curiam). What Defendants knew about the waste-to-energy project (and when they knew it) is peculiarly within Defendants' knowledge. Moreover, Plaintiffs alleged facts to support their belief regarding Defendants' knowledge, including allegations to suggest that Gandhi and the Lepley Defendants knew that the waste-to-energy project was in jeopardy because construction had not yet started and that they had to recruit more investors to ensure that the early investors would receive the promised interest payments. This allegedly perpetuated their ability to continue the alleged scheme.

concealed material information from Plaintiffs in furtherance of their fraud and that Plaintiffs could not have discovered the truth about the Allied projects on their own.

In summary, Plaintiffs allege that Gandhi and the Lepley Defendants, along with Alford, represented that the Plaintiffs' investments had zero or minimal risk and that Plaintiffs would receive a full return of their investments within a year, along with regular interest payments, even though Gandhi and the Lepley Defendants, along with Alford, knew or should have known when they made these representations that the projects were not feasible and that Plaintiffs would never be repaid.[4] Plaintiffs further allege that Gandhi and the Lepley Defendants, along with Alford, intended for Plaintiffs to rely on the false representations, that Plaintiffs relied on the false representations by investing their money in the Allied projects, and that Plaintiffs were damaged as a result because they did not receive all the interest they were owed or any return of their principal as promised. The Court is satisfied that Plaintiffs adequately allege claims against Gandhi and the Lepley Defendants based upon their affirmative and knowingly

---

[4] It is true that Plaintiffs allege the entire spectrum of intent: that Gandhi and the Lepley Defendants, along with Alford, made the misrepresentations either "willfully to deceive, recklessly without knowledge, or by mistake" for the purpose of inducing Plaintiffs to invest in the Allied projects. Am. Compl. ¶ 108. Obviously, the misrepresentation claims will only succeed if Plaintiffs present evidence of the requisite intent.

false representations, their negligent misrepresentations, and their fraudulent concealment of material information. The motion to dismiss Count VI of the Amended Complaint is denied.[5]

> 2. *Unjust Enrichment, Constructive Trust, and Money Had and Received Claims Against Gandhi*

Plaintiffs' claims for unjust enrichment, money had and received, and constructive trust against Gandhi are based on the payment of commissions to Gandhi for his recruitment of Plaintiffs. Am. Compl. ¶¶ 47, 67 (alleging that Gandhi "received a commission on each individual investor he was able to bring into the scheme"). Gandhi's argument in support of his motion to dismiss these claims is a narrow one. He contends that the claims fail because the Amended Complaint does not allege who paid Gandhi commissions or where the funds came from. According to Gandhi's motion, these commissions must have come from Plaintiffs for them to prevail on their claims for unjust enrichment, money had and received, and constructive trust.

Accepting Plaintiffs' allegations in their Amended Complaint as true and construing all reasonable inferences in their favor, the Court finds that Plaintiffs have adequately alleged that the commissions came from Plaintiffs. Preliminarily, the Court notes that Plaintiffs seek the return of "commissions," not some other type of fees paid by some other

---

[5] Plaintiffs' civil conspiracy claim likewise survives given the Court's findings regarding the underlying claims upon which the alleged conspiracy depends.

party to Gandhi.  A "commission" is generally a "fee paid to an agent for a particular transaction as a percentage of the money received from the transaction." *Commission*, Black's Law Dictionary (11th ed. 2019).  The question here is whether the "commission" was a separate fee that was calculated based on the amount of the investments Gandhi brought into the enterprise or whether the "commission" represented Gandhi's portion of the investments he secured.  At the pleading stage, it is reasonable to infer from the allegations in the Amended Complaint that Gandhi received commissions from the amounts Plaintiffs paid to participate in the investment opportunities.  And, Plaintiffs allege that Gandhi participated in the scheme to obtain the payments from Plaintiffs and that he obtained a share of those payments in the form of commissions.  Although a standard commission agreement may not give rise to a claim for money had and received, Plaintiffs here allege that their payments were made for the benefit of Allied and Gandhi even though Gandhi was not included specifically in the payee line.  Rather than receiving a true commission, Gandhi received a percentage of the funds deposited with Allied.  The Court finds that Plaintiffs have alleged enough for their claims for unjust enrichment, money had and received and constructive trust to proceed.[6]

---

[6] Gandhi does not seriously dispute that Plaintiffs have sufficiently alleged the other elements of these claims, and therefore the Court does not address those issues today.

14

C.   Debra Dlugolenski's Motion to Dismiss (ECF No. 69)

Plaintiffs allege that Alford wrongfully used their investment money "for his personal benefit for the payment of debts and the acquisition of real and personal property." Am. Compl. ¶ 83.   Plaintiffs further allege that Dlugolenski, by virtue of her marriage to Alford and her financial dependence on him, was unjustly enriched to the detriment of Plaintiffs when Alford used Plaintiffs' funds to pay for the couple's expenses and to acquire real property for the couple. *Id.* ¶¶ 83, 127. Plaintiffs also assert that Dlugolenski holds money or property that rightfully belongs to Plaintiffs and was received through Alford's wrongful acts. *Id.* ¶¶ 134-136. Plaintiffs seek a constructive trust over any property that was acquired based on the fraudulent representations of Alford and others, including property and assets Dlugolenski shares with or received from Alford. *Id.* ¶¶ 130-131, 132. Dlugolenski seeks dismissal of all of these claims.

A "claim of unjust enrichment will lie if there is no legal contract and the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." *Vernon v. Forensic Assurance Acct.*, 774 S.E.2d 197, 212 (Ga. Ct. App. 2015) (quoting *Jones v. White*, 717 S.E.2d 322, 328 (Ga. Ct. App. 2011)).   "The concept of unjust enrichment in law is

premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." *Id.* "Thus, a claim for unjust enrichment exists where a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it." *Campbell v. Ailion*, 790 S.E.2d 68, 73 (Ga. Ct. App. 2016). Here, Plaintiffs do not allege that Dlugolenski knew that Alford misappropriated funds from Plaintiffs or that she knew he used those funds to pay for the couple's expenses and to acquire real property for the couple. For that reason, the Court finds that Plaintiffs' unjust enrichment claim against Dlugolenski fails.[7]

The next question is whether Plaintiffs' claim against Dlugolenski for money had and received likewise fails. To maintain a money had and received claim, a plaintiff must establish that a person "received money justly belonging to

---

[7] In their response brief, but not their Amended Complaint, Plaintiffs speculate that Dlugolenski could have known based on her marriage to Alford that Alford was misappropriating Plaintiffs' investment funds and using the money for the couple's expenses. This response brief conjecture, however, is not an allegation that Dlugolenski had knowledge of Alford's alleged scheme.

another" and that the plaintiff "made a demand for payment and was refused." *City of Atlanta v. Hotels.com*, 710 S.E.2d 766, 770 (Ga. 2011) (concluding that the online travel companies' money had and received claim failed because they never made a demand for payment). Dlugolenski does not seriously dispute that Plaintiffs allege that she, through Alford, received money justly belonging to Plaintiffs. She does assert that the money had and received claim fails because Plaintiffs did not allege that they made a demand for repayment from any of the Defendants. But Plaintiffs did make such an allegation: they allege that Alford and Allied refused to return Plaintiffs' investments after Plaintiffs demanded their return. Am. Compl. ¶¶ 78, 83. Thus, Plaintiffs did demand and were refused the return of all funds that Alford misappropriated from them, including any money that Alford allegedly funneled into property or accounts he shared with Dlugolenski that are now potentially considered marital assets in the couple's divorce proceeding.[8] At this stage in the proceedings, the Court finds Plaintiffs

---

[8] The Georgia Court of Appeals has permitted a money had and received claim against individuals who received funds to which they were not entitled even though they did not know when they received the funds that they were not entitled to them. *See generally Haugabook v. Crisler*, 677 S.E.2d 355, 359-60 (Ga. Ct. App. 2009). After the individuals in *Haugabook* learned that they were not entitled to the funds, they refused to return them to the rightful owner despite a demand, and the rightful owner was permitted to bring a money had and received claim.

have sufficiently alleged a demand for return of the misappropriated funds.

The Court also cannot, as a matter of law, rule out a constructive trust as a potential remedy.[9] *See* O.C.G.A. § 53-12-132 ("A constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."); *see also Total Supply, Inc. v. Pridgen*, 598 S.E.2d 805, 807 (Ga. Ct. App. 2004) ("Where the constructive trustee has invested such funds or has purchased other property, the real owner can follow it wherever it can be traced.").

## III. Plaintiffs' Partial Summary Judgment Motion (ECF No. 60)

Kurudi H. Muralidhar, Samhitha Medatia, Dynamic W2E, LLC, and Dynamic AES, LLC (collectively, the "MSJ Plaintiffs") filed a motion for partial summary judgment in their favor on their breach of contract claim against Alford. Plaintiffs contend that Allied breached its contracts with them by defaulting on certain notes when they came due. Creditors of Allied initiated

---

[9] Dlugolenski argues that the remedy of a constructive trust is not available here because Plaintiffs merely assert breach of contract claims against Alford. While Plaintiffs do assert a breach of contract claim against Alford and Allied, they also assert an independent claim that Alford and others fraudulently induced Plaintiffs to invest in Allied projects. Plaintiffs further assert an unjust enrichment claim against Alford based on his alleged misappropriation of funds fraudulently obtained from Plaintiffs.

an involuntary Chapter 7 bankruptcy proceeding against Allied, so any claims against the company are stayed. The MSJ Plaintiffs argue that Alford is liable to them because he was a guarantor on the notes in the event of a default by Allied.

A.   Summary Judgment Standard

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

In accordance with the Court's local rules, the MSJ Plaintiffs submitted a statement of undisputed material facts with their summary judgment motion. See M.D. Ga. R. 56 (requiring statement of material facts that is supported by the record).   Though Alford submitted an affidavit in response to the MSJ Plaintiffs' motion, he did not respond to the statement of material facts.   And, although Alford successfully petitioned

the Court to defer ruling on the summary judgment motion under Federal Rule of Civil Procedure 56(d) and was given extra time to gather evidence to oppose the summary judgment motion, *see* Order, Aug. 12, 2020, ECF No. 98, Alford never supplemented his response to present additional evidence or a response to the statement of material facts. Therefore, the statement of material facts is deemed admitted pursuant to Local Rule 56. See M.D. Ga. R. 56 ("All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate."). The Court reviewed the MSJ Plaintiffs' citations to the record to determine if a genuine factual dispute exists. *See Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008).

After Alford failed to supplement his response to the summary judgment motion, the MSJ Plaintiffs filed a motion for final judgment (ECF No. 101). Alford responded to that motion, but he did not present any evidence to create a genuine fact dispute.[10]   Rather, he acknowledged that the MSJ Plaintiffs' "motion is based on a note and guarantee argument, which in a

---

[10] The MSJ Plaintiffs filed a motion to strike Alford's response to the motion for final judgment as an untimely response to their summary judgment motion.  The Court did not consider the substance of Alford's response in reaching its decision on the summary judgment motion, so the motion to strike (ECF No. 104) is moot.

state court would seem like a completely unassailable claim." Alford's Resp. to MSJ Pls.' Mot. for Final J. 1, ECF No. 102.

B.   Factual Background

Each of the MSJ Plaintiffs invested money in Allied, and Allied executed a negotiable note to each MSJ Plaintiff.  Each note specified the interest rate, the frequency of interest payments, and the maturity date that the principal and accrued but unpaid interest were "due and payable in full."  *E.g.*, Muralidhar Aff. Ex. B, Negotiable Note (Apr. 26, 2018), ECF No. 60-2 at 8.  Each note stated that if Allied failed to pay the amount payable when due, Allied "shall be in default."  *Id.*  In the event of a default, the investor could demand "the entire principal amount outstanding, and all accrued interest thereon." *Id.*  Alford personally guaranteed each note "in the event of a default" by Allied.  *Id.*  Following are details about each note:

- Kurudi H. Muralidhar Note.  Principal: $25,000. Interest Rate: 18% annualized interest, paid monthly. Note Date: April 26, 2018. Maturity date: October 30, 2018. Muralidhar Aff. Ex. B, Negotiable Note (Apr. 26, 2018), ECF No. 60-2 at 8.

- Samhitha Medatia Note 1.  Principal: $25,000. Interest Rate: 18% annualized interest, paid monthly. Note Date: May 1, 2018. Maturity date: October 31, 2018.  Medatia Aff. Ex. A, Negotiable Note (May 1, 2018), ECF No. 60-3 at 5.

- Samhitha Medatia Note 2.  Principal: $25,000.  Interest Rate: 18% annualized interest, paid monthly.  Note Date: October 15, 2018.  Maturity date: October 14, 2019. Medatia Aff. Ex. B, Negotiable Note (Oct. 15, 2018), ECF No 60-3 at 7.

- Dynamic AES, LLC Note 1.  Principal: $350,000.  Interest rate: 18% annual simple interest, paid quarterly.  Note Date: April

12, 2018.  Maturity Date: July 31, 2019.  Amin Aff. Ex. A, Negotiable Note (Apr. 12, 2018), ECF No. 60-4 at 7.

♦ Dynamic AES, LLC Note 2.  Principal: $175,000.  Interest rate: 18% annual simple interest, paid quarterly.  Note Date: June 1, 2018.  Maturity Date: July 31, 2019.  Amin Aff. Ex. B, Negotiable Note (June 1, 2018), ECF No 60-4 at 9.

♦ Dynamic W2E, LLC Note 1. Principal: $450,000.  Interest rate: 12% annual simple interest, paid quarterly.  Note Date: July 6, 2018.  Maturity Date: July 31, 2019. Amin Aff. Ex. C, Negotiable Note (July 6, 2018), ECF No. 60-4 at 11.

♦ Dynamic W2E, LLC Note 2. Principal: $115,000.  Interest rate: 12%, annual simple interest, paid quarterly.  Note Date: September 6, 2018.  Maturity Date: July 31, 2019. Amin Aff. Ex. D, Negotiable Note (Sept. 6, 2018), ECF No 60-4 at 13.

♦ Dynamic W2E, LLC Note 3. Principal: $825,000.  Interest rate: 12% annual simple interest, paid quarterly.  Note Date: December 18, 2018.  Maturity Date: July 31, 2019. Amin Aff. Ex. E, Negotiable Note (Dec. 18, 2018), ECF No 60-4 at 15.

Allied did not pay the balance due on any of the notes by the maturity dates.  After Allied failed to pay the amounts due by the maturity dates and before Plaintiffs filed this action, each of the MSJ Plaintiffs sent correspondence to Allied stating that Allied was in default and that the entire unpaid balance of each note was outstanding.  Muralidhar Aff. Ex. C, Letter from K. Muralidhar to D. Alford (Nov. 8, 2019), ECF No. 60-2 at 10; Medatia Aff. Ex. D, Letter from S. Medatia to D. Alford (Nov. 8, 2019), ECF No. 60-3 at 11; Amin Aff. Ex. G, Email from R. Amin to D. Alford (Aug. 13, 2019), ECF No. 60-4 at 21; Amin Aff. Ex. F, Email from S. Phade to D. Alford (Aug. 20, 2019), ECF No. 60-4 at 17; Pls.' Mot. for Summ. J. Ex. 4, Letter from J. Bhusri to Allied Energy Services, LLC (Aug. 23, 2019), ECF No. 60-5.  None

of the MSJ Plaintiffs has received a return of principal or the total amount of interest due.

C.   Discussion

The MSJ Plaintiffs claim that Allied defaulted on its notes by failing to return their principal and by failing to make interest payments when due, even after the MSJ Plaintiffs demanded payment.[11]   The MSJ Plaintiffs further contend that since Alford personally guaranteed the notes, the Court should enforce the personal guarantee because a guarantor is jointly and severally liable with the principal unless the contract provides otherwise—and the contracts at issue here do not.  *See* O.C.G.A. § 10-7-1 ("Sureties, including those formerly called guarantors, are jointly and severally liable with their principal unless the contract provides otherwise.").

Alford acknowledges that the MSJ Plaintiffs' "note and guarantee argument . . . would seem like a completely unassailable claim," Alford's Resp. to MSJ Pls.' Mot. for Final J. 1, but he argues that the Court should defer ruling on the summary judgment motion because there may not be federal question jurisdiction.  Plaintiffs allege that Alford, Allied, and Augusta Waste-to-Energy, LLC violated federal securities laws, and federal question jurisdiction is predicated on those

---

[11] The MSJ Plaintiffs recognize that their claims against Allied are subject to the automatic bankruptcy stay.  Alford does not contend that the stay should be extended to cover him.

claims.  Am. Compl. ¶¶ 1, 84-96.  Alford argues that it is not clear whether Plaintiffs adequately pleaded claims for violations of federal securities laws.  And, citing 28 U.S.C. § 1367(c)(3), Alford contends that the Court should decline to exercise supplemental jurisdiction over the state law claims because it is possible that the Court might dismiss all of the claims over which it has original jurisdiction.  But Alford did not move to dismiss the federal question claims, and his response brief does not properly present to the Court the question of whether Plaintiffs adequately pleaded the federal question claims.[12]  Thus, there is presently no basis for the Court to decline supplemental jurisdiction under § 1367(c)(3).

In an action to recover sums owed under a promissory note or a guaranty, a movant may establish a right to judgment as a matter of law by producing the relevant loan documents, showing that they were executed by the debtor and guarantor, and by showing that the note or guaranty is in default.  *See, e.g.*, *Citizens Bank, Douglasville v. Wix*, 267 S.E.2d 856, 857 (Ga. Ct. App. 1980) ("Since the defendant admitted executing the note in question . . . and since the note, on its face, shows that it is past due and in default, plaintiff established a prima facie right to judgment.").  Here, the MSJ Plaintiffs produced the

---

[12] The Court understands that Dlugolenski recently filed a motion to dismiss the federal question claims.  Neither that motion nor a related motion to stay is ripe for review.

negotiable notes as exhibits to their summary judgment motion. The negotiable notes were signed by Alford on behalf of Allied and by Alford as Guarantor.   Alford does not dispute that he executed the guaranties.   Alford does contend that the present summary judgment motion fails because the MSJ Plaintiffs never provided Allied with written notice of acceleration of the debt. But, as discussed above, the MSJ Plaintiffs presented evidence that they did send written default notices.

Alford also summarily asserts that Allied did not default on the notes, did not fail to make interest payments, and has not refused to return the principal plus accrued interest. Alford Aff. ¶¶ 19-21, ECF No. 81-1.   But his argument appears to be that since Allied is currently subject to an involuntary bankruptcy proceeding, which was filed in January 2020—after Allied failed to pay the sums due by the dates specified in the notes and after the MSJ Plaintiffs sent written default notices to Allied via Alford—Allied cannot presently make payments to the MSJ Plaintiffs.   *Id.* ¶ 22.   Alford did not present any evidence that Allied was not in default *before* the involuntary bankruptcy action was filed, and he did not present any evidence to dispute the MSJ Plaintiffs' assertion that they have not received a return of their principal or all of the interest due from Allied.   Accordingly, there is no genuine fact dispute that the notes are past due and in default.   And since there is no

dispute that Alford signed the guaranties, the MSJ Plaintiffs are entitled to summary judgment on this claim against Alford in the following amounts:[13]

| | |
|---|---|
| Kurudi H. Muralidhar | $32,155.00 |
| Samhitha Medatia | $64,850.00 |
| Dynamic AES, LLC | $674,146.23 |
| Dynamic W2E, LLC | $1,698,441.68 |

The MSJ Plaintiffs ask the Court to enter final judgment on their breach of contract claims against Alford.  Federal Rule of Civil Procedure 54(b) permits the Court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties," but only if the Court "expressly determines that there is no just reason for delay."  If these were the only claims that the MSJ Plaintiffs were pursuing and if they did not overlap with their other claims, the Court would be inclined to enter partial final judgment on these claims.  But in addition to their breach of contract claims against Alford and Allied based on their investments, the MSJ Plaintiffs also brought other claims related to their Allied investments, including claims against Alford, Allied, and others for fraud, conversion, unjust enrichment, and money had and received.  Thus, the present order only disposes of one claim by a subset of

---

[13] Plaintiffs requested principal plus interest due as of October 22, 2020.  The amounts are based on the principal amount, interest rate, note date, and the year fraction rounded to the hundredth.

Plaintiffs who maintain other claims based on the same investments that formed the basis of their breach of contract claims. The MSJ Plaintiffs' breach of contract claim seeks remedies that overlap with remedies they seek on their remaining claims that have not yet been adjudicated. Under these circumstances, the Court finds that entry of final judgment as to this subset of breach of contract claims would result in the kind of piece-meal adjudication that district courts have been cautioned to avoid. Accordingly, at this time, the Court cannot make the Rule 54(b) certification that the MSJ Plaintiffs seek.

## CONCLUSION

As discussed above, the motions to dismiss for insufficient service of process are denied. The Court denies Gandhi's motion to dismiss (ECF No. 75) and the Lepley Defendants' motion to dismiss (ECF No. 76). The Court grants Dlugolenski's motion to dismiss (ECF 69) as to the unjust enrichment claim but denies it as to the money had and received and constructive trust claims. The MSJ Plaintiffs' summary judgment motion (ECF No. 60) is granted, their motion for final judgment (ECF No. 101) is denied, and their motion to strike (ECF No. 104) is terminated as moot.

IT IS SO ORDERED, this 14th day of December, 2020.

S/Clay D. Land
_____
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA