```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION
```

KOSHA, LLC, *et al.*,                *

    Plaintiffs,                  *

vs.                                  *
                                 CASE NO. 4:19-CV-172 (CDL)

CLARENCE DEAN ALFORD, *et al.*,      *

    Defendants.                  *

## O R D E R

One of the Defendants in this action, Debra Vaughn Dlugolenski, against whom Plaintiffs assert only state law claims, seeks dismissal of Plaintiff's amended complaint because it fails to state federal law claims against her co-defendants, and thus subject matter jurisdiction does not exist. Contrary to Dlugolenski's arguments, Plaintiffs' amended complaint does state claims under the federal securities laws against co-defendants Clarence Dean Alford, Allied Energy Services, LLC, and Augusta Waste to Energy, LLC. Accordingly, the Court has supplemental jurisdiction over the state law claims against Dlugolenski, and her motion to dismiss ((ECF No. 105) is denied. Within twenty-one days of the date of this order, the parties shall submit an amended joint proposed scheduling order.

DISCUSSION

Preliminarily, the Court rejects Dlugolenski's argument that this action must be dismissed for lack of subject matter jurisdiction based on the contention that the state law claims predominate over the federal securities claims. Although Plaintiffs assert several state law claims based on the same investments that form the subject matter for the federal claims, the availability of relief under state law does not deprive Plaintiffs of their federal forum. *See, e.g.*, *Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971) (noting that if "there was a 'sale' of a security and since fraud was used 'in connection with' it, there is redress under [§] 10(b) [of the Exchange Act], whatever might be available as a remedy under state law."). The Court acknowledges that an action "may be dismissed for lack of subject-matter jurisdiction" if the federal claim "is (1) 'immaterial and made solely for the purpose of obtaining jurisdiction,' or (2) 'wholly insubstantial and frivolous.'" *Grady v. United States Gov't*, 702 F. App'x 929, 930-31 (11th Cir. 2017) (per curiam) (quoting *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998)) (dismissing federal claims that were so "far-fetched" and "wholly unsupported" that they were "insubstantial and frivolous"); *accord Sanders*, 138 F.3d at 1352 (declining to

dismiss action because the plaintiff plausibly alleged a claim under federal law). But that is not the case here. As explained below, Plaintiffs claims are clearly sustainable under the federal securities laws; therefore, the Court has subject matter jurisdiction over this action.

To state a claim under the federal securities laws, Plaintiffs must allege that Defendants took certain actions in connection with the purchase or sale of a "security." *See, e.g.,* 15 U.S.C. § 78j(b) (making it unlawful to "use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe"). Dlugolenski argues that the notes Plaintiffs purchased were not "securities" within the meaning of the federal securities laws.

Under both the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"), the definition of the term "security" includes "any note." 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10). The Supreme Court has instructed that "the phrase 'any note' should not be interpreted to mean literally 'any note,' but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts"—regulating

3

investments. *Reves v. Ernst & Young*, 494 U.S. 56, 63 (1990). Still, "a note is presumed to be a 'security,' and that presumption may be rebutted only by a showing that the note bears a strong resemblance" to one of the following enumerated categories of instrument: (1) "the note delivered in consumer financing," (2) "the note secured by a mortgage on a home," (3) "the short-term note secured by a lien on a small business or some of its assets," (4) the note evidencing a 'character' loan to a bank customer," (5) "short-term notes secured by an assignment of accounts receivable," (6) "a note which simply formalizes an open-account debt incurred in the ordinary course of business," or (7) a note "evidencing loans by commercial banks for current operations." *Id.* at 65, 67. Here, Dlugolenski does not contend that the security notes purchased by Plaintiffs closely resemble any of these examples, and the Court finds that they do not.

Even if a note lacks similarity to one of the enumerated categories, the courts apply four factors in deciding whether a transaction involves a "security." *Id.* at 66-67. Those factors are: (1) "the motivations that would prompt a reasonable seller and buyer to enter into it," (2) the distribution plan for the instrument, (3) "the reasonable expectations of the investing public," and (4) "whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the

4

instrument, thereby rendering application of the Securities Acts unnecessary." *Id.* at 66-67. "Failure to satisfy one of the factors is not dispositive; they are considered as a whole." *S.E.C. v. Thompson*, 732 F.3d 1151, 1160 (10th Cir. 2013) (quoting *S.E.C. v. Wallenbrock*, 313 F.3d 532, 537 (9th Cir. 2002)). In *Reves*, the Supreme Court examined the four factors and determined that demand notes issued by an agricultural cooperative were "securities" because (1) the cooperative sold the notes in an effort to raise capital for general business operations and purchasers bought them to earn a profit in the form of interest, (2) although the notes were not traded on an exchange, they were "offered and sold to a broad segment of the public," (3) the advertisements for the notes characterized them as "investments," and (4) there were no risk-reducing factors such as insurance, collateral, or applicable regulatory scheme. *Reves*, 494 U.S. at 67-69.

Here, Plaintiffs allege that they purchased security notes from Allied as investments in Allied's waste-to-energy and solar projects, with the expectation of making a significant profit. Thus, the Court finds that the first factor puts the security notes in the category of a security. *See id.* at 66 ("If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is

5

expected to generate, the instrument is likely to be a 'security.'").

The second factor to be considered is whether the notes were "offered and sold to a broad segment of the public." *Id.* at 68. Dlugolenski emphasizes that Plaintiffs allege that Defendants targeted their community for investments, not the general investing public. There is no allegation, though, that Defendants placed any limitations on who could purchase the notes, and Plaintiffs allege that certain individuals were paid commissions to recruit more investors—suggesting that Defendants were interested in widening the scope of distribution. Plaintiffs further allege that at least 436 individual investors invested in Defendants' scheme. While this factor may not weigh strongly in favor of concluding that the security notes are securities, it does not weigh strongly against such a finding, either.

The third factor is the "reasonable expectations of the investing public." *Id.* at 66. Here, the security notes were sold as investment opportunities, and investors were led to believe that they would receive regular 15% returns, with the potential for additional profit sharing. This factor strongly weighs in favor of categorizing the notes as securities; under Plaintiffs' allegations, a reasonable investor sending funds to

6

Allied would expect that the funds were an investment, not just a short-term loan.

The fourth and final factor to be considered is the existence of any risk-reducing factors that would render application of the Securities Acts unnecessary. *Id.* at 67. The notes were not collateralized or insured, and the only risk-reducing factors Dlugolenski points to are Alford's guaranty of the notes and the availability of state law remedies for fraud and breach of contract. Plaintiffs allege that Defendants perpetuated a pyramid scheme that collapsed and that Alford did not satisfy the guaranties after Plaintiffs demanded return of their investments. And the fact that state law remedies may be available is not a risk-reducing factor that suggests the security notes were not securities. *See id.* at 69 (explaining that "substantial regulation under the federal banking laws" or ERISA regulation of pension plans were adequate risk-reducing factors but that the notes at issue in *Reves* "would escape federal regulation entirely if the [Securities] Acts were held not to apply"). This factor weighs in favor of finding that the security notes are securities.

For these reasons, the Court holds that the *Reves* factors weigh in favor of finding that the notes at issue here are "securities." The Court understands that under both the Securities Act and the Exchange Act, the term "security" does

7

not include any note "which has a maturity at the time of issuance not exceeding nine months, exclusive of days of grace." 15 U.S.C. §§ 77c(a)(3), 78c(a)(10). Dlugolenski argues that some of the notes at issue here had a maturity date of less than nine months (though she did not articulate which specific notes), so they may not be considered securities within the meaning of the Exchange Act. But Dlugolenski acknowledges that at least twenty-one of the notes did have a maturity exceeding nine months, which means that they do not fall within the nine-month safe harbor. The Court finds it unnecessary to decide at this stage of the litigation which notes fall within the nine-month safe harbor.

The Court has carefully considered Dlugolenski's remaining miscellaneous arguments as to why Plaintiffs' complaint does not state federal law claims against her co-defendants. Finding them unpersuasive, the Court rejects them without further discussion.

Lastly, having found that Plaintiffs have sufficiently alleged a basis for federal subject matter jurisdiction because of their claims against Dlugolenski's co-defendants, the Court further finds that declining supplemental jurisdiction over Plaintiffs' state law claims against Dlugolenski under the circumstances presented here would be inappropriate. A district court may decline to exercise supplemental jurisdiction if a

claim raises novel or complex issues of state law, if the claim substantially predominates over the claim over which the court has original jurisdiction, if the district court has dismissed all claims over which it has original jurisdiction, or in exceptional circumstances where compelling reasons exist for declining jurisdiction.  28 U.S.C. § 1367(c).  Plaintiffs' claims against Dlugolenski are for money had and received and constructive trust.  These claims are based on Plaintiffs' allegation that Dlugolenski, through her co-defendant and former husband, Alford, received money justly belonging to Plaintiffs. These claims are not novel or complex, and they do not substantially predominate over Plaintiffs' securities fraud claim.  Moreover, the claims against Dlugolenski are inextricably intertwined with Plaintiffs' claims against Alford, including Plaintiffs' claim under § 10(b) of the Exchange Act. The Court finds no compelling reason to decline jurisdiction over these claims.

## CONCLUSION

Dlugolenski's motion to dismiss (ECF No. 105) is denied. Within twenty-one days of the date of this order, the parties shall submit an amended joint proposed scheduling order.

IT IS SO ORDERED, this 28th day of July, 2021.

S/Clay D. Land<br>
CLAY D. LAND<br>
U.S. DISTRICT COURT JUDGE